Case 6:10-bk-10520-KSJ    Doc 43    Filed 08/04/20    Page 1 of 8

ORDERED.

Dated:  August 04, 2020

Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| Jorge Ricardo Macias Coto and ) | Case No.  6:10-bk-10520-KSJ |
| Ruth Janice Gimenez Ortiz, ) | Chapter 7 |
| ) | |
| ) | |
| Debtors. ) | |
| ) | |

**ORDER DENYING CREDITORS' JOINT
MOTION TO VACATE ORDER GRANTING DEBTOR'S
<u>MOTION FOR CONTEMPT AND IMPOSING SANCTIONS AND FINAL JUDGMENT</u>**

Arguing excusable neglect under Rule 60(b)(1) of the Federal Rules of Civil Procedure,[1] National Collegiate Student Loan Trusts[2] (collectively "Creditors") ask this Court to vacate its Order Granting Debtor's Motion for Contempt and Imposing Sanctions and the related Final Judgment.[3] Finding the Creditors demonstrate no excusable neglect for their failure to timely respond, the motion is denied.

---

[1] Fed. R. Civ. P. 60(b)(1), incorporated into the Bankruptcy Code by Federal Rule of Bankruptcy Procedure 9024.
[2] Movants include the National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2005-1, and National Collegiate Student Loan Trust 2007-3.
[3] Creditors' Joint Motion to Vacate Order Granting Debtor's Motion for Contempt and Imposing Sanctions and Final Judgement is Doc. No. 32.  The Order and Final Judgment that the Creditors seek to vacate are Doc. Nos. 26 and 27.

On June 16, 2010, Ruth Gimenez Ortiz (the "Debtor") filed this Chapter 7 bankruptcy case scheduling four loans owed to the Creditors.[4] On October 6, 2010, she received a Discharge.[5] Creditors continued collection efforts after the Discharge,[6] eventually filing four separate lawsuits (the "Lawsuits") against the Debtor.[7] In the Creditors' view, the loans are student loans excepted under 11 U.S.C. Section 523(a)(8), and as a result not discharged.[8] Debtor disagrees believing the loans are *not* student loans, were discharged, and the continuing collection efforts violated the discharge injunction prohibiting creditors from collecting discharged debts. Debtor made a substantial effort to stop the Creditors' collection efforts before seeking sanctions in the Bankruptcy Court.[9] She heard nothing in return but utter silence.

So, on October 1, 2019, Debtor filed a Motion for Contempt and Request for Sanctions (the "Sanctions Motion") against the Creditors, alleging Creditors' attempts to collect on the loans violated her Discharge.[10] The same day Debtor's counsel properly served the Sanctions Motion on

---

[4] Doc. No. 1.

[5] Doc. No. 15.

[6] Doc. No. 32-1, ¶¶ 22, 32, 42, 52. Under Section 524(a)(2) of the Bankruptcy Code, a discharge "operates as an injunction against the commencement or continuation of action … or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). In *McLean*, the Eleventh Circuit Court of Appeals joined "other circuits in concluding that § 524(a)(2) is an expansive provision designed to prevent any action that has the effect of pressuring a debtor to repay a discharged debt ..." *In re McLean*, 794 F.3d 1313, 1320 (11th Cir. 2015). By barring such actions, the discharge injunction plays an "important role in achieving the Bankruptcy Code's overall policy aim of giving a debtor a 'fresh start.'" *Matter of Jenkins*, 608 B.R. 565, 568 (Bankr. N.D. Ala. 2019) (quoting *McLean*, 794 F.3d at 1321).

[7] *National Collegiate Student Loan Trust 2006-1 v. Ruth J. Gimenez*, Case No. 19-CA-001605 (Osceola Cty. May 29, 2019); *National Collegiate Student Loan Trust 2006-2 v. Ruth J. Gimenez*, Case No. 19-CA-001712 (Osceola Cty. May 31, 2019); *National Collegiate Student Loan Trust 2005-1 v. Ruth J. Gimenez*, Case No. 19-CA-001716 (Osceola Cty. June 3, 2019); *National Collegiate Student Loan Trust 2007-3 v. Ruth J. Gimenez*, Case No. 19-CA-003214 (Osceola Cty. Oct. 4, 2019).

[8] Doc. No. 32, p. 11-12.

[9] On September 12, 2019, Debtor's counsel sent letters via certified mail to Creditors' registered agent informing Creditors' they had violated the discharge injunction by filing the first three Lawsuits. The letter asked Creditors to "contact our office to resolve the matter no later than September 26, 2019; failure to do so shall result in our filing to reopen our client's bankruptcy filing and seeking sanctions." Debtor's counsel also sent the letters to Creditors' state court counsel in the Lawsuits. All these letters were received because their agents acknowledged receipt on September 20, 2019. Creditors, however, never responded. On October 4, 2019, National Collegiate Student Loan Trust 2007-3 filed the fourth Lawsuit. On November 8, 2019, Debtor's counsel sent another letter via certified mail advising of the discharge violation. Again, Creditors never responded.

[10] Doc. No. 20.

Wilmington Trust Company, Creditors' correct registered agent.[11] Creditors' registered agent admits receiving the Sanctions Motion on October 7, 2019.[12] Creditors were properly served with the Sanctions Motion.

Creditors also later received proper service of the hearing notice. The Court scheduled a hearing on the Sanctions Motion for December 17, 2019. On October 24, 2019, Debtor's counsel correctly served a copy of the Notice of Hearing via regular mail, again to Creditors' proper registered agent.[13] Creditors acknowledge their registered agent received the notice after October 24, 2019, but did not specify the exact date of receipt or what actions they took upon receiving the hearing notice.

Under the Creditors' "standard intake process for new legal matters of this type," their registered agent forwarded the Sanctions Motion and Notice of Hearing to Creditors' sub-servicer Transworld Systems Inc. ("TSI").[14] Creditors did not disclose when this happened or whether the transmittal occurred in one or two deliveries. In its role as sub-servicer, TSI should have coordinated with outside counsel to prosecute and defend litigation in which Creditors are a party.[15] TSI failed to do its job on the Sanctions Motion.

Creditors further explain that when their registered agent forwards a new legal matter to TSI, it is assigned to a support services team member.[16] Apparently, team members are trained to document new legal matters and forward them to TSI's legal and compliance department for proper handling.[17] Creditors explain via Bradley Luke's affidavit, a TSI employee, that the team member

---

[11] Debtor's counsel also served the Sanctions Motion on Creditors' state court counsel in the Lawsuits. Doc. No. 20, p. 9-10.
[12] Doc. No. 32-1, ¶ 54.
[13] Debtor's counsel again also served the Notice of Hearing on Creditors' state court counsel in the Lawsuits. Doc. No. 22.
[14] Doc. No. 32, p. 8.
[15] *Id.*
[16] *Id.*
[17] *Id.*

assigned to the matter "made an inadvertent mistake when handling the Sanctions Motion and notice of hearing by not forwarding the documents to the appropriate resources to review and retain counsel to defend."[18] That's the entire explanation offered by the Creditors to support their claim of "excusable neglect."

On December 17, 2019, the Court held the scheduled and properly noticed hearing on the Sanctions Motion.[19] Creditors filed no response to the Sanctions Motion and did not attend the hearing.[20] On January 9, 2020, the Court entered its Order Granting Debtor's Motion for Contempt and Imposing Sanctions ("Order").[21] Based on Debtor's unchallenged assertions that the loans were discharged personal (not educational) loans, I found the Creditors repeatedly had violated the Debtor's Discharge and awarded compensatory damages and attorney's fees and costs.[22] Debtor's counsel promptly served copies of both the Order and Final Judgement on Creditors' registered agent.[23]

Upon receipt of the Order and related Final Judgment, Creditors "woke up." They moved to stay the Order and Final Judgment, which recently was denied.[24] And, they filed their Joint Motion to Vacate the Order and Final Judgment, contending their absence from the proceedings was due to excusable neglect.[25]

Under Rule 60(b)(1), a court may relieve a party from a final judgment or order upon showing excusable neglect.[26] Per the United States Supreme Court, excusable neglect includes

---

[18] *Id.* at p. 8-9.
[19] Doc. No. 24.
[20] Doc. No. 32, p. 2.
[21] Doc. No. 26.
[22] *Id.* A related Final Judgment was entered on January 10, 2020. Doc. No. 27.
[23] Doc. Nos. 28 and 29.
[24] Doc. No. 30, filed on January 14, 2020. The order denying the motion was entered on July 10, 2020. Doc. No. 41.
[25] Doc. No. 32, filed on January 27, 2020.
[26] *Chege v. Georgia Dep't of Juvenile Justice*, 787 F. App'x 595, 597 (11th Cir. 2019); Fed. R. Civ. P. 60(b)(1).

4

"situations in which the failure to comply with a filing deadline is attributable to negligence."[27] Excusable neglect is based in equity and considers "the totality of the circumstances surrounding the party's omission."[28] To set aside a default judgment by excusable neglect in the Eleventh Circuit, the defaulting party must show: (1) they had a meritorious defense; (2) granting the motion would not prejudice the other party; and (3) they had a "good reason" for failing to respond.[29]

Here, the Court finds, even if the Creditors asserted a meritorious defense to the Sanctions Motion[30] and any prejudice to the Debtor would be minimal,[31] the Creditors give no valid reason, much less a "good reason," for failing to attend the hearing or oppose the entry of the Order and Final Judgment.

Creditors emphasize their failure to respond to the Sanctions Motion and appear at the hearing was "an inadvertent error, not intentional misconduct."[32] As an initial matter, the Court notes in making this "good reason" argument, Creditors rely on an incorrect legal standard. Creditors cite to *Cooper v. Lane*[33] for the proposition that a court evaluates the willfulness and culpability of the moving party's actions in a "good reason" analysis.[34] However, *Cooper* concerns setting aside a default for good cause under Rule 55(c), not the more rigorous excusable neglect standard.[35] Creditors also cite to *Gerstenhaber v. Matherne Holdings*, and suggest a good reason

---

[27] *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394, 113 S.Ct. 1489.
[28] *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 934 (11th Cir. 2007).
[29] *Grant v. Pottinger-Gibson*, 725 F. App'x 772, 775 (11th Cir. 2018); *Sloss*, 488 F.3d at 934; *In re Worldwide Web Systems, Inc. v. Feltman*, 328 F.3d 1291, 1295 (11th Cir. 2003).
[30] Creditors assert they have two meritorious defenses. First, they contend Debtor's bankruptcy did not discharge the loans because they made to repay an educational benefit and, because they were made under a program guaranteed by a non-profit institution, which renders the loans non-dischargeable under Section 523(a)(8). Second, Creditors assert they had an objectively reasonable basis for believing the loans were not discharged based on the Debtor classifying the loans as "student loan[s]" on her Schedule F.
[31] Creditors argue the Debtor would not be prejudiced because vacating the Order and Final Judgment would only result in a simple delay, not lost evidence, more difficult discovery, or risk of fraud and collusion.
[32] Doc. No. 32, p 15.
[33] *Cooper v. Lane*, No. 5:19-CV-273 (MTT), 2019 WL 5309116, at *1 (M.D. Ga. Oct. 21, 2019).
[34] Doc. No. 32, p. 15.
[35] *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1338 (11th Cir. 2014) (identifying the excusable neglect standard is more rigorous than the good cause standard).

exists if the moving party "was not acting out of disrespect for the Court or intentional disregard for [the] proceedings."[36] But, this portion of the opinion was under the "considering all of the relevant factors" of the Court's discussion of excusable neglect.[37] The District Court for the Southern District of Florida, in considering the totality of the circumstances, simply concludes the party intended "no disrespect." The Court did not hold that "intending no disrespect" constituted a "good reason" to vacate a prior order and never conducted a "good reason" analysis in its opinion.[38]

The issue here is not whether the Creditors here intended disrespect. I assume they always treat court proceedings respectfully and meant no disrespect. The actual issue is whether their failure to timely participate in this dispute was due to *excusable neglect.*

The Debtor gets the legal standard right, relying on Eleventh Circuit cases *Sloss* and *Gibbs*. In *Sloss* the Eleventh Circuit Court of Appeals upheld a finding of no excusable neglect when the defendant actually tried to get counsel and file an answer explaining that "… Rule 60(b)(1) cases have consistently held that where internal procedural safeguards are missing, a defendant does not have a 'good reason' for failing to respond to a complaint."[39] The Eleventh Circuit further highlighted "it is important to know exactly when certain actions were taken."[40] Nonspecific affidavits and the "lack of detail …[are] fatal to [the defaulting party's] Rule 60(b)(1) motion."[41]

Here, Creditors do not credibly explain their failure to timely defend the Sanctions Motion. Creditors *separately* received the Sanctions Motion and the Notice of Hearing. Receipt was at least

---

[36] *Gerstenhaber v. Matherne Holdings, Inc.*, No. 18-61213-CIV, 2018 WL 6261848, at *2 (S.D. Fla. Nov. 6, 2018); Doc. No. 32, p. 15.
[37] *Id*.
[38] *Id.*
[39] *Sloss*, 488 F.3d at 935.
[40] *Id.*
[41] *Id.*

three weeks apart between the two mailings. Creditors' registered agent perhaps forwarded the Sanctions Motion and Notice of Hearing to Creditors' sub-servicer, TSI, but we do not know if they were sent together or at separate times. The sub-servicer TSI apparently assigned the matter to an employee who failed to take action. Again, we have no details on this process or the exact actions taken. No party affiliated with Creditors followed up on the matter until after the Court entered its Final Judgment.

Creditors highlight their "standard intake process" where "specially trained employees of [their sub-servicer] monitor and track all litigation related to [Creditors]."[42] Creditors then merely explain that "[d]espite this training, the employee assigned to this matter made an inadvertent mistake when handling I [sic] by not forwarding the Sanctions Motions and notice of hearing to the appropriate resources for review and to retain outside counsel."[43] I find this explanation insufficient. Creditors' use of the singular to describe the apparent mishandling of multiple notices on multiple days, or Creditors' lack of any real chronological detail in describing what happened does not constitute excusable neglect or even a "good reason" to vacate the Order and Final Judgment.

Finally, though not binding, this Court is convinced that the Creditors had ample prior *informal* notice of the Debtor's concerns prior to the hearing, and they just ignored it.[44] Creditors repeatedly disregarded or mishandled the Debtor's pleas to stop their collection efforts and the court filings until after the Final Judgment was entered. They now seek to undo the orders offering no valid reason for their inaction.

---

[42] Doc. No. 32, p. 15.
[43] *Id.*
[44] *See e.g.* nn.10, 12, and 14.

7

If Creditors' argument for excusable neglect were accepted, respondents could freely ignore court proceedings until an unfavorable ruling issued and then claim "mistake" supplying no details or justification for not timely participating. Such is not the standard. Creditors have failed to show excusable neglect that would justify vacating the Order and Final Judgment.

Accordingly, it is

**ORDERED:**

1. Creditors' Joint Motion to Vacate Order Granting Debtor's Motion for Contempt and Imposing Sanction and Final Judgment for Excusable Neglect Under Fed. R. Civ. P. Rule 60(b)(1) (Doc. No. 32) is **DENIED.**

2. The Order and Final Judgment remain valid and subject to enforcement, upon which execution shall lie.

###

Debtors' Counsel, Elayne M. Conrique, is directed to serve a copy of this order on all interested parties.